**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Olson Windish,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-22-01162-PHX-DWL<br><br>**ORDER** |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 17) and the Commissioner's answering brief (Doc. 20), as well as the Administrative Record (Doc. 9, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.   Procedural History

On September 5, 2017,[1] Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on August 1, 2015. (AR at 342.) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.* at 103.) On November 9, 2020, following a telephonic hearing, the ALJ issued

---

[1] Although both of the ALJ's decisions state that Plaintiff's application was filed on June 18, 2017 (AR at 26, 103), the parties agree that the filing date was September 5, 2017. (Doc. 17 at 2; Doc. 20 at 2.) That is also the date reflected in the application. (AR 342.) At any rate, any discrepancy is immaterial because both dates fall after the March 2017 effective date for the new SSA regulations.

an unfavorable decision. (*Id.* at 103-120.) However, the Appeals Council later granted Plaintiff's request for review and remanded the case to the ALJ for further proceedings. (*Id.* at 126-30.)

On January 21, 2022, following the remand, the ALJ held another telephonic hearing. (*Id.* at 13.) During the post-remand proceedings, Plaintiff amended the alleged onset date to January 1, 2018. (*Id.* at 14.)

On February 23, 2022, the ALJ issued another unfavorable decision. (*Id.* at 13-26.) The Appeals Council later denied review. (*Id.* at 1-3.)

II.     The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial

evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2018 and had not engaged in substantial, gainful work activity during the approximately three-month period between her amended alleged onset date and the date last insured. (AR at 16.) Next, the ALJ found that Plaintiff had the following severe impairments: "multiple sclerosis and degenerative disc disease." (*Id.*)[2] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id*. at 18-19.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and/or carry up to twenty pounds occasionally and ten pounds frequently. She can stand and/or walk for four hours in an eight-hour workday and sit for six hours per eight-hour workday with normal breaks. She can frequently operate foot controls with the right lower extremity and frequently push and/or pull with the dominant right upper extremity. She can frequently reach overhead, handle and finger with the right upper extremity. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, crouch, crawl, kneel, and balance as defined in the Dictionary of Occupational Titles. She can frequently stoop. She requires a handheld cane for uneven/slippery terrain or walking greater than 100 yards. She can have occasional concentrated exposure to non-weather-related extreme heat. She can have no exposure to hazards such as dangerous moving machinery or unprotected heights.

---

[2] The ALJ also noted that the record "reflects a number of conditions considered 'non-severe,'" including incontinence, overactive bladder, irritable bowel syndrome, high body mass index, and depressive and anxiety disorder. (AR at 17-18.)

(*Id.* at 19.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record during the relevant time period for the reasons explained in this decision." (*Id.* at 20-21.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Alicia Blando, M.D., state agency consultant ("[t]he undersigned is persuaded by [her] opinions"); (2) Kim Heaton, M.D., state agency consultant ("[t]he undersigned is persuaded by [her] opinions"); (3) Christine Joy, P.A., consultative examiner ("[t]he undersigned is largely persuaded"); (4) Barry Hendin, M.D., treating physician ("[t]he undersigned is unpersuaded"); (5) Michael Crincoli, M.D., treating physician ("[t]he undersigned is unpersuaded by his opinion"); (6) Joshua Rubin, Psy.D., state agency consultant ("[t]he undersigned is persuaded by [his] opinions"); (7) Anna Titus, Ph.D., state agency consultant ("[t]he undersigned is persuaded by [her] opinions"); and (8) Kenneth Littlefield, Psy.D., consultative examiner ("[t]he undersigned is persuaded by his opinion"). (*Id.* at 21-22.) Additionally, the ALJ evaluated a third-party report from Plaintiff's husband, concluding that "the degree of functional loss described by Mr. Windish is generally inconsistent with the overall record . . . [but] [h]is concern and care for the claimant's well-being is much appreciated." (*Id.* at 23.)

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a school principal and elementary school teacher and was also capable of performing other jobs that exist in significant numbers in the national economy, including cashier self-service, shipping/receiving weigher, and routing clerk. (*Id.* at 23-25.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 25-26.)

…

IV. Discussion

Plaintiff presents two issues on appeal: (1) whether "the ALJ properly considered the need to use a cane"; and (2) whether the ALJ properly considered the opinions of P.A. Joy. (Doc. 17 at 6, 11.) As a remedy, Plaintiff argues that "[t]he court should reverse and award benefits. In the alternative, the Court should reverse and remand for further proceedings." (*Id.* at 14.)

   A. **Cane-Related Restriction In The RFC**

      1. Relevant Background

As noted, the RFC formulated by the ALJ included the following restriction related to cane use: "[Plaintiff] requires a handheld cane for uneven/slippery terrain or walking greater than 100 yards. . . . She required an assistive device for walking extended distances while leaving the other hand free for carrying small items." (AR at 19.) In various other sections of the report, the ALJ cited pieces of evidence that the ALJ viewed as consistent with these limitations. (*Id.* at 18, 21 ["The claimant uses her cane only 'on occasion' when she has weakness," citing "23E/7"]; *id.* at 19 ["At the disability hearing and in disability documentation, the claimant alleges . . . she can walk no more than one hundred feet before she must stop and rest between ten and thirty minutes," citing "23E/1/6"]; *id.* at 20 ["Consistent with her reports, the claimant also requires a handheld cane for uneven/slippery terrain or walking greater than 100 yards," citing "23E/7"]; *id.* at 21 ["[P.A. Joy] opined the claimant could perform light work except she requires the use of a cane, can no more than occasionally balance, or climb, and can no more than frequently perform other postural maneuvers."].)

Notably, although the ALJ seemed to credit Plaintiff's testimony and P.A. Joy's opinions at least in some respects when it came to the need for cane-related restrictions, the ALJ did not credit other aspects of their testimony and opinions. As for Plaintiff, the ALJ declined to fully credit her testimony for two reasons: (1) it was inconsistent with "the overall objective medical evidence," in part due to the existence of "unremarkable" "physical examination findings . . . across the record, showing normal range of motion

[and] normal gait"; and (2) it was inconsistent with Plaintiff's activities of daily living, which included reading, watching television, doing crafts, traveling, shopping, meeting others for coffee, attending church on a regular basis, going out independently, driving a car, doing simple household chores for about three hours each day, and preparing simple meals several times each weak. (*Id.* at 20-21.) As for P.A. Joy, the ALJ was "largely persuaded" by her opinions but found her opinions unpersuasive in certain respects. (*Id.* at 21-22.)

### 2. The Parties' Arguments

Plaintiff argues that the ALJ erred by concluding, as part of the RFC, that she only needs a cane when walking more than 100 yards or when walking on uneven/slippery terrain. (Doc. 17 at 8.) Plaintiff identifies the following pieces of evidence as the proof that she always needs to use a cane: (1) her testimony during the post-remand hearing (AR at 45) that she had been "using a cane from [the last hearing] until now uninterrupted"; (2) her husband's assertion in his third-party report (AR at 457) that she uses a cane for "exacerbation or when feeling weak"; (3) the fact that Dr. Hendin wrote her a medical order (AR at 991) for a cane and wheelchair; (4) the fact that she was observed using a cane (AR at 604) during the consultative examination; (5) treatment notes (AR at 868, 1266) advising her to "[u]se a cane or other aid to help you get around and conserve energy, if needed"; (6) a treatment note from June 2020 (AR at 1129) in which she "report[ed] recent falls within the last few months . . . if not actively using a cane to assist with mobility"; and (7) a treatment note from June 2020 (AR at 1130) in which she was advised to "[u]se cane for all of June and increase activity by walking 15 minutes each day." (Doc. 17 at 8-9.) Plaintiff thus asserts: "[T]he reality is [Plaintiff], when she experiences MS symptoms requires the use of a cane to ambulate not just when walking 100 feet or on slippery or uneven terrain. . . . The fact that [Plaintiff] testified that she utilizes a cane every day . . . [means] she uses the cane every day on occasions when she feels weak." (*Id.* at 9.) Plaintiff argues that the ALJ's contrary conclusion "lacks logic and rationality" and faults the ALJ for not seeking clarification. (*Id.* at 9-10.) Plaintiff also argues that although she did not

always use of a cane during medical appointments, this fails to support the ALJ's RFC formulation because (1) the ALJ did not rely on this particular rationale and (2) intermittent usage is not inconsistent with her position that she requires a cane whenever she feels weakness on a specific day. (*Id.* at 10.)

In response, the Commissioner argues that substantial evidence supports the ALJ's cane-usage limitation. (Doc. 20 at 5-15.) As an initial matter, the Commissioner emphasizes that the ALJ bears the ultimate responsibility for formulating a claimant's RFC. (*Id.* at 5-7.) The Commissioner then identifies several reasons why the challenged finding should be upheld. First, the Commissioner contends that "Plaintiff's own allegations do not contradict the ALJ's finding." (*Id.* at 7.) For example, the Commissioner notes that Plaintiff herself, in her 2017 function report, stated that she could walk for approximately 100 feet before needing to stop and rest. (*Id.*, citing AR at 539.) The Commissioner further contends that Plaintiff did not mention any need for a cane when testifying during her first hearing in 2020 and did not specify, during the 2022 hearing, how often she needs a cane or how far she can walk without a cane. (*Id.*) Second, the Commissioner contends that the objective medical records are consistent with the ALJ's determination, because some note that Plaintiff can walk without a cane (AR at 590), others set out the same limitations as set forth in the RFC (AR at 72-73, 94), and none specifically state that Plaintiff is more limited with respect to cane use than as set forth in the RFC. (*Id.* at 7-9.) The Commissioner also notes that some of the records on which Plaintiff relies are from June 2020, which is more than two years after the narrow period of alleged disability (*i.e.*, January-March 2018) at issue here. (*Id.*) Third, the Commissioner argues that, to the extent Plaintiff's argument is that the ALJ improperly discredited her testimony when formulating the RFC, any such argument fails because the ALJ identified clear and convincing reasons, supported by substantial evidence, for making an adverse credibility finding. (*Id.* at 9-15.)

Plaintiff did not file a reply.

…

…

3.  <u>Analysis</u>

The Court finds no harmful error in the ALJ's RFC formulation related to cane usage. An initial difficulty in evaluating Plaintiff's challenge is characterizing the nature of that challenge (a characterization that, in turn, dictates the applicable standard of review). Under Ninth Circuit law, when a claimant argues that an ALJ improperly rejected her symptom testimony despite the presence of objective medical evidence that could reasonably be expected to produce the pain or symptoms alleged, a reviewing court must determine whether the ALJ "provide[d] specific, clear, and convincing reasons for" the adverse credibility determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (citation and internal quotation marks omitted). In contrast, when a claimant simply argues that the ALJ erred when formulating the RFC, the ALJ is held to a less-demanding standard. *See, e.g., Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."); *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Unfortunately, Plaintiff's brief is not a model of clarity as to the nature of her first assignment of error. Although the brief contains a few passing references to the clear-and-convincing standard (Doc. 17 at 7-8), Plaintiff's essential argument is not that the ALJ improperly *rejected* her symptom testimony by making an unwarranted adverse credibility finding—it is that the ALJ *misunderstood* her testimony (and certain other pieces of medical evidence) as it relates to her need to use a cane. In the Court's view, this is best characterized as an RFC-related challenge, not a challenge to the ALJ's adverse credibility finding. Nevertheless, in an abundance of caution, the Court clarifies that even if Plaintiff had attempted to raise a challenge to the ALJ's adverse credibility finding, that challenge would fail on this record. As discussed, the ALJ identified two reasons for the adverse

credibility finding: (1) inconsistency with the objective medical evidence; and (2) inconsistency with Plaintiff's activities of daily living. (AR at 20-21.) Under Ninth Circuit law, the latter qualifies as a permissible basis for such a finding. *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including inconsistencies between her daily activities and alleged limitations . . . ."). However, in her brief, Plaintiff does not even acknowledge this aspect of the ALJ's ruling, much less attempt to show why it was erroneous. Thus, Plaintiff has forfeited any challenge to the ALJ's adverse credibility determination. *Cf. Guinn v. Comm'r of SSA*, 2023 WL 2495360, *8 (D. Ariz. 2023) ("Plaintiff focuses on only a subset of the ALJ's proffered reasons and attempts to establish that those reasons were factually unsupported or inadequately explained. But even if Plaintiff were correct as to that subset of the ALJ's reasons, any error would be harmless in light of the ALJ's identification of other, unchallenged reasons why Dr. Lazarz's opinions lacked supportability and consistency.").[3]

With those clarifications in mind, the remaining analysis is straightforward. The record contains ample evidence that is consistent with, and supports, the ALJ's determination in the RFC that Plaintiff would "require[] a handheld cane for uneven/slippery terrain or walking greater than 100 yards" but would not require a cane under other circumstances. (AR at 19.) For example, in her function report, Plaintiff was asked: "How far can you walk before needing to stop and rest?" (*Id.* at 539.) In response,

---

[3] The Court also notes that the Commissioner provides an extensive discussion (Doc. 20 at 13-15), which the Court finds persuasive (and which Plaintiff failed to controvert by choosing not to file a reply brief), as to why the ALJ's finding of inconsistency with activities of daily living was supported by substantial evidence.

Plaintiff wrote: "Approx. 100 feet." (*Id.*) Separately, the report from Plaintiff's psychological exam notes that Plaintiff "was adequately mobile during the evaluation," "did not use an assistive device," "was able to get up from a chair without difficulty," and "walked with a side to side gait." (*Id.* at 590-91.) Additionally, the state agency consultants—both of whom the ALJ deemed persuasive in credibility assessments not challenged in this appeal (*id.* at 21)—opined that Plaintiff would need the "[u]se of a cane intermittently for support, for long distances" or "intermittently for support, for long distances, uneven terrain and to help dec[rease] the effects of pain." (*Id.* at 72, 94.) It was rational under these circumstances for the ALJ to include the challenged cane-related limitation in the RFC rather than the more-restrictive limitation Plaintiff now urges. *Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.") (citation omitted).

Finally, as for the supposedly contrary evidence cited by Plaintiff (*e.g.*, some of Plaintiff's testimony and certain statements by Dr. Hendin and P.A. Joy), not only does the Court agree with the Commissioner that it was rational for the ALJ to construe those pieces of perhaps ambiguous evidence as consistent with the RFC's cane limitation, but to the extent they could be viewed as inconsistent with the RFC, the ALJ was entitled to disregard them based on the ALJ's determinations (which Plaintiff has either not challenged or not successfully challenged in this appeal) that the source of the statement was less than fully credible or less than fully persuasive. *Cf. Sayer v. Kijakazi*, 2022 WL 1153944, *1 (9th Cir. 2022) ("Because the ALJ permissibly weighed Sayer's testimony, Sayer's challenges to the ALJ's residual functional capacity determination likewise fail.").

    B. **P.A. Joy**

        1. <u>P.A. Joy's Opinions</u>

On April 17, 2018, P.A. Joy conducted a consultative examination of Plaintiff and then filled out a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." (AR at 603-05.) At the outset of the form, P.A. Joy diagnosed

Plaintiff with multiple sclerosis and irritable bowel syndrome. (*Id.* at 603.) P.A. Joy then filled out a series of boxes indicating the limitations that would be present over the next 12 months. (*Id.* at 603-05.) First, P.A. Joy described Plaintiff's limitations in lifting and carrying, opining that Plaintiff would "frequently" (defined as "1/3 to 2/3 of an 8-hour day") be able to lift or carry up to 10 pounds and "occasionally" (defined as "up to 1/3 . . . of an 8-hr. day") be able to carry up to 20 pounds. (*Id.* at 603.) Second, P.A. Joy described Plaintiff's limitations in standing and walking, opining that Plaintiff would be able to stand and/or walk for six hours in an eight-hour day. (*Id.*) P.A. Joy also checked a box indicating that Plaintiff needed to use a cane "for all terrains" but did not specify, one way or another, whether Plaintiff could walk any set distance without using a cane. (*Id.* at 603-04.) Third, P.A. Joy described Plaintiff's limitations in sitting, opining that she had no such limitations. (*Id.* at 604.) Fourth, P.A. Joy described Plaintiff's limitations in seeing, hearing, and speaking, again opining that she had no such limitations. (*Id.*) Fifth, P.A. Joy described Plaintiff's limitations related to climbing and balancing ("occasionally") and stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling ("frequently"). (*Id.*) Sixth, P.A. Joy described Plaintiff's various environmental limitations, opining that Plaintiff could work around heights, moving machinery, and extremes in temperatures but could not work around chemicals, dust/fumes or gases, or excessive noise. (*Id.*) Finally, in the last section of the form entitled "Additional comments," P.A. Joy wrote: "During a multiple sclerosis flare, [Plaintiff] would likely suffer from fatigue that would making working in an 8-hour day and a 40-hour week difficult." (*Id.* at 605.)

    2. <u>The ALJ's Evaluation Of P.A. Joy's Opinions</u>

The ALJ found P.A. Joy's opinions largely persuasive, albeit while concluding that Plaintiff should be viewed as more limited than P.A. Joy had opined. (*Id.* at 21-22.) The ALJ's full rationale was as follows:

> The state agency also consulted with Christine Joy, P.A., who conducted a one-time internal medicine evaluation of the claimant in April 2018. In so doing, she opined the claimant could perform light work except she requires the use of a cane, can no more than occasionally balance, or climb, and can no more than frequently perform other postural maneuvers. She is unable to work around pulmonary irritants or around excessive noise. The undersigned

is largely persuaded. Her opinion was supported by her physical examination showing evidence of right lower extremity weakness, right footdrop, and a spastic gait. However, the undersigned reduces the claimant to no more than four hours in an eight-hour workday and assesses greater postural limitations due to evidence of "difficulty with standing and getting on the examination table without assistance." She could stoop, but "with some difficulty." She was "unable to lift either foot off the ground without assistance" and she "has difficulty with balance."

(*Id.*, record citations omitted.)

### 3. The Parties' Arguments

Plaintiff's only criticism of the ALJ's evaluation of P.A. Joy's opinions is that "[t]he ALJ made no mention whatsoever of P.A. Joy's opinion that during an MS flare, [Plaintiff] will likely suffer from fatigue that would make working in an 8-hour workday and a 40-hour work week difficult." (Doc. 17 at 13.) This was erroneous, Plaintiff argues, because the ALJ "failed to provide a logical and rational basis for not considering or even mentioning P.A. Joy's opinion. The ALJ failed to recognize the fatigue that MS flares cause and the impact such impairments would have on [Plaintiff's] ability to work on a full-time, consistent basis." (*Id.* at 13-14.) Plaintiff contends the error was not harmless because "[t]he vocational expert stated that an individual with the limitation of exceeding two or more absences habitually and or being off-task would preclude all employment." (*Id.* at 14.)

In response, the Commissioner begins by noting that "Plaintiff raises no objection to the ALJ's assessment of the persuasiveness of Ms. Joy's opinion but argues that the ALJ erred by not discussing Ms. Joy's comment at the end of her opinion document." (Doc. 20 at 15.) The Commissioner argues that this criticism lacks merit because "Ms. Joy's comment regarding Plaintiff's possible fatigue from multiple sclerosis was not a medical opinion as defined by the relevant regulations" and "[t]he ALJ therefore had no duty to assess that comment as an opinion." (*Id.*) More specifically, the Commissioner argues that "Ms. Joy's statement that '[d]uring a multiple sclerosis flare, [Plaintiff] would *likely* suffer from fatigue that would make working in an 8-hour day and a 40-hour week *difficult*' provides no information about what Plaintiff can still do despite her impairments or

whether Plaintiff has any impairment related limitations or restrictions." (*Id.* at 17.) The Commissioner elaborates: "A person may find a task 'difficult' but still retain the ability to perform that task despite this difficulty. Thus, it is not clear from Ms. Joy's statement whether Plaintiff would be prevented from performing any type of work due to this possible fatigue." (*Id.*) In a related vein, the Commissioner argues that "[s]aying that something is 'likely' to occur indicates that it might happen, but it also might not happen. Thus, it is unclear from Ms. Joy's statement whether Plaintiff would experience any such fatigue making it 'difficult' to perform full time work." (*Id.* at 17-18.) Finally, the Commissioner contends that "the additional qualifier that Ms. Joy's comment only applied to Plaintiff's abilities '[d]uring a multiple sclerosis flare' makes the statement even less clear because there is no information in either Ms. Joy's examination or the remainder or the record showing how often Plaintiff experienced flares during the relevant period." (*Id.* at 18.)

As noted, Plaintiff did not file a reply.

### 4. <u>Analysis</u>

The Court finds no harmful error in the ALJ's evaluation of P.A. Joy's opinions. As with Plaintiff's other assignment of error, an initial difficulty presented by this challenge is deciding how to characterize it (which, in turn, dictates the applicable standard of review). Under the new SSA regulations, when a claimant challenges an ALJ's decision to discredit the opinions of a medical source, a reviewing court ordinarily must evaluate whether the ALJ "considered the supportability and consistency factors" and whether substantial evidence supports the ALJ's conclusions as to those factors. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). However, these requirements only apply to the evaluation of medical opinions, and not all statements by medical sources qualify as opinions. *See generally Hale v. Kijakazi*, 2022 WL 14654959, *6 (D. Montana 2022) ("An ALJ must discuss statements by a medical source that qualify as 'medical opinions' . . . [but] is not required to address statements by a medical source that do not qualify as medical opinions.") (citations omitted).

Here, Plaintiff faults the ALJ for not specifically analyzing, and incorporating into

the RFC, the following statement that appeared in P.A. Joy's form: "During a multiple sclerosis flare, [Plaintiff] would likely suffer from fatigue that would making working in an 8-hour day and a 40-hour week difficult." (AR at 605.) The Court finds no error in the ALJ's approach because this statement does not qualify as a medical opinion. By regulation, a "medical opinion" is defined as follows:

> A medical opinion a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . . (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). The statement at issue here does not satisfy this definition for the reasons stated by the Commissioner—it does not describe what Plaintiff can still do despite her impairments. *See, e.g., Dorsey v. Comm'r of SSA*, 2023 WL 6058505, \*5 (D. Ariz. 2023) ("The statement in Dr. Subbarao's treatment note does not qualify as a 'medical opinion' . . . because it does not address Plaintiff's functionality and merely describes the frequency . . . of Plaintiff's headaches. Even accepting the treatment note at face value, it does not address the extent to which Plaintiff's headaches would affect Plaintiff's ability to work."); *Brayden B. v. Comm'r, SSA*, 2023 WL 5606981, \*4 (D. Or. 2023) ("[Dr. Heuser] did not provide any description of what Plaintiff could still do despite his urticaria. Nothing in the record or Plaintiff's briefing shows where Dr. Heuser identified what Plaintiff can do despite his limitations; the sum total of the opinion is that his urticaria and dermatitis 'keep him from working.' Because that is not a 'medical opinion' that requires independent analysis under the regulations, the Court finds the ALJ did not err by failing to analyze Dr. Heuser's opinion.") (citations omitted); *Rodin v. Comm'r of Soc. Sec.*, 2023 WL 3293423,

*18-19 (E.D. Cal. 2023) ("[N]otably absent are specific opinions concerning what Plaintiff is capable of doing, and specific functional limitations. . . . Accordingly, the Court finds the ALJ was not required to evaluate Dr. Khanna's treatment notes as a 'medical opinion' under the relevant regulations.").

Apart from criticizing the ALJ for failing to address this specific statement, Plaintiff does not raise any developed argument as to why the ALJ's evaluation of P.A. Joy's opinions was flawed. The Court further notes that the ALJ expressly considered the supportability and consistency factors when analyzing P.A. Joy's opinions and ultimately imposed, in the RFC, limitations that were more favorable to Plaintiff than the limitations to which P.A. Joy opined. (AR at 21-22 ["Her opinion was supported by her physical examination showing evidence of right lower extremity weakness, right footdrop, and a spastic gait. However, the undersigned reduces the claimant to no more than four hours in an eight-hour workday and assesses greater postural limitations due to evidence of 'difficulty with standing and getting on the examination table without assistance.'"].) This provides an additional reason why Plaintiff has not established the existence of harmful error in relation to the ALJ's evaluation of P.A. Joy's opinions. *See, e.g., Petty v. Colvin*, 2014 WL 1116992, *17 (D. Ariz. 2014) ("Plaintiff has not cited any authority indicating that an ALJ cannot moderate 'the full adverse force of a medical opinion' in a manner that is more favorable to a claimant.") (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)).

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 10th day of October, 2023.

Dominic W. Lanza
United States District Judge